FRANK BARTLEY v. ROBERT R. HOWELL and Another.[1]

February 6, 1901.

Nos. 12,453—(229).

**Defective Machinery—Assumption of Risk.**

> *Held*, in a personal injury action, that from the testimony presented by plaintiff it clearly appeared that the defect in the machine which caused the injury, and the risks incident to its condition, were known and appreciated by plaintiff, and that he had assumed said risks. ·

Action in the district court for Hennepin county to recover $10,813.10 damages for personal injuries. The case was tried before Elliott, J., and a jury, which rendered a verdict in favor of plaintiff for $1,800. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

[1] Reported in 85 N. W. 167.

*Davis, Kellogg & Severance* and *Keith, Evans, Thompson & Fair-child,* for appellants.

*James D. Shearer* and *C. H. Childs,* for respondent.

COLLINS, J.

Plaintiff, while in the defendants' employ, and engaged in piece-work in operating a machine used to force harrow teeth through strips of plank, which, when put together, composed harrow frames, lost a portion of his hand, and brought this action to recover damages. The verdict was for the plaintiff, and the present appeal is from an order wholly denying an alternative motion for judgment notwithstanding such verdict, or, in case that was denied, for a new trial.

A full description of the machine is unnecessary. Plaintiff and one McCune usually operated it together. When the loose teeth had been placed in sockets on a beam which traveled up and down, the machine being out of gear and at rest, plaintiff pressed or "tripped" with his foot a lever, which, springing out from under a clip near the floor, threw the machine in gear and into operation. The beam ascended, and drove the teeth in place. A lever was then used by McCune to throw the machine out of gear, and the beam descended to its resting place of its own weight, remaining until the machine again went into gear. To stop the beam at the most convenient place for inserting teeth, there had been attached to the shaft, about four inches above the floor and close to one of the journal boxes on the frame and in which the shaft ran, what was known as a "dog wheel," and to operate it an upright tripping lever. The dog wheel had nothing to do with putting the machine in or out of gear. Its sole purpose was, through the action of the dog lever, to stop the beam at the proper place as it fell down after the machine had been tripped out of gear. Of course, the wheel revolved with the shaft, one way as the beam went up, the other way when it dropped. Attention is now called to the fact that the shaft, the dog wheel, the dog lever fixed to the beam, and the trip or foot lever, with the clip into which it slipped, were all in plain sight of the men at work, and that whenever the lever sprung out of the clip the machine went into gear and into full operation.

The plaintiff and McCune had worked at this machine several weeks, when the dog wheel above mentioned became broken on one side, and the defendants caused it to be turned around. Its place upon the shaft was not changed, but it was brought into position so that the work which it had been doing would still be done. This change was not satisfactory; for the dog lever was too long, and the beam did not stop soon enough when descending. Defendants ordered this to be remedied, and the dog lever was removed by McCune, plaintiff being present, and taken to be altered. As McCune was going away, he suggested that one of the nuts on the journal before mentioned be loosened, that the machine might run easier, and plaintiff undertook to do this with a wrench. This brought one hand very close to the broken wheel, the lever slipped from under the clip, the machine went into gear, the shaft revolved, the broken side of the wheel caught this hand, and plaintiff received the injuries complained of.

The negligence upon defendants' part, on which plaintiff relies, is that, having full notice and knowledge, they allowed the machine to remain in a dangerous condition; the particular defect being that when a large riveting machine, standing close by, was in operation, this trip or foot lever on this tooth-press machine would be jarred and shaken until, of its own motion, it would slip out from under the clip, throw the gearing into action, and start the machine. This was what occurred when the injuries were received. It was also contended that the defendants were negligent in not boxing the dog wheel before mentioned. To establish defendants' knowledge of the defect in the trip or foot lever, or the clip, or both, this defect being the one most relied on, plaintiff called McCune as a witness, who testified that from the time plaintiff and himself commenced work the lever of its own motion slipped out from under the clip several times each day if the riveting machine was at work; that they had talked it over together; had called the attention of the shop foreman to it more than once, and had decided the method to be adopted in remedying it. As to plaintiff's knowledge of this inclination of the lever, and that the machine was thus thrown into gear and operation, and as to what either or both of these men would do

when this happened, McCune was emphatic, and much given to detail, not only as to what occurred and how, but in respect to what was said. On his cross-examination he repeatedly testified, and with great positiveness, as to the frequency with which the machine went into gear in this way each day when plaintiff and himself were working together, and what they said and did about it, particularly as to what was said to the foreman.

Knowledge of the defective condition of the machine was in this way fastened upon defendants at the trial, but at the same time it was clearly shown that day after day plaintiff and McCune worked with full notice of the exact condition, without insisting that there was danger to either, or, as a condition for remaining, that the defect be remedied by their employers. McCune did, on the redirect, attempt in a feeble way to qualify his statements as to what plaintiff knew upon this point; but his previous positive statements, over and over again repeated, that the machine slipped into gear six or seven times a day, and was doing it right along, while he and Bartley were working, were not swept aside. His statements first made, to the effect that the machine was continually slipping into gear while both he and Bartley were at work, and that Bartley knew it, were really left unqualified by anything that he subsequently said. He certainly did not attempt anywhere to say that his former testimony that the machine was slipping into gear continually, and that this happened when Bartley was present, was erroneous. The plaintiff, when testifying, was silent upon this particular feature of the case. He did not attempt directly to contradict McCune, or to assert positively that he was ignorant of a liability on the part of the foot lever to slip out from the clip at inopportune times. The men worked together. What one observed as to this particular matter must have been seen by the other.

In our opinion, it was established beyond any controversy that the plaintiff was fully informed of this defect, and that the slipping out of the foot lever at improper times, without the intervention of either of the persons running the machine, was a common and daily occurrence. It has been suggested that it was not shown that this had occurred after certain repairs were made to

82 M.—25

the dog wheel, some days before the accident, and that, even if plaintiff had knowledge before the repairs, he may have supposed that this particular defect had then been remedied. But, as before stated, this wheel was in no manner connected with the foot lever. Repairs or changes as to that part of the machine could have no effect whatever upon the lever or the clip. In addition to this, all of these parts were in plain sight. The plaintiff could not help seeing them as he worked, and, as a man with considerable knowledge of machinery, he could not help noticing that nothing had been done with either lever or clip. No matter what changes had been made in the dog wheel or the lever which operated it, the fact still remained that the foot lever would at inopportune times slip out from under the clip, and as a result the machine would be put in motion.

On the case made by plaintiff it appears that he knew that this machine was liable at any time to slip into gear of itself. He also knew that the dog wheel was not boxed or covered. This was perfectly obvious. These defects being known to him, he, as a mature man of varied experience, and, as his testimony shows, versed in mechanical terms, and familiar with different sorts of machines, could not fail to appreciate the dangers of working about one in the condition in which the testimony shows this to have been. These dangers were perfectly clear, open, and, obvious, and he must be held to have assumed the risks. By continuing to operate the machine in its defective condition, plaintiff took upon himself the natural and ordinary risks incident thereto, among them the risk of being injured if the machine should accidently start when he was in an unsafe position. He not only knew the defects, but, as an intelligent man, he fully appreciated the risk of placing his hand where it might be struck by the rapidly revolving and broken dog wheel. It follows that the order of the court below, in so far as it denied defendants' motion for a new trial, must be reversed.

We need not at this time refer specially to the contention that plaintiff was guilty of contributory negligence, which, in itself, would prevent recovery, because, under his contract of hiring, it was his duty to repair the defect in the lever and clip,—a repair

which could have been, and was, easily made soon after the accident.

Another point has been made by the defendants in respect to a release and discharge from all claim of damages introduced in evidence, which was executed by plaintiff some eight days after the accident. In form this was a full and complete discharge of the defendants from all liability on account of the accident, and it is argued that the testimony upon the claim that it was procured through fraud and deceit was wholly insufficient to justify the verdict, in effect, that this claim was true. As a new trial must be had for reasons heretofore stated, and as we have not been able to agree as to the sufficiency of this evidence, we decline to pass upon it. We place our order of reversal wholly upon the doctrine of the assumption of risks by plaintiff.

The order appealed from, in so far as it denied defendants' motion for a new trial, is reversed.